# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAP SE and BUSINESS OBJECTS SOFTWARE LTD. t/a SAP SOLUTIONS,<br><br>   Plaintiffs,<br><br>   v.<br><br>TMX GROUP LIMITED,<br><br>   Defendant. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs SAP SE ("SAP") and Business Objects Software Ltd. t/a SAP Solutions ("Business Objects") (collectively, "Plaintiffs"), by and through their attorneys, for their Complaint for Patent Infringement against TMX Group Limited ("TMX" or "Defendant") allege as follows:

## NATURE OF THIS ACTION

1. This is a civil action for the infringement of U.S. Patent Nos. 8,782,059 (the "'059 Patent"); 8,577,927 (the "'927 Patent"); and 9,009,354 (the "'354 Patent") (collectively, the "Asserted Patents").

## PARTIES

2. Plaintiff SAP SE is a corporation organized and existing under the laws of Germany that maintains an established place of business at Dietmar-Hopp-Allee 16, Walldorf, Germany, 69190.

3. Plaintiff Business Objects Software Ltd. t/a SAP Solutions is a private company by limited shares in Ireland, with its principal place of business at Waterside 3, City West Business Campus, Dublin, 24 Ireland.

4.    Upon information and belief, Defendant TMX is a Canadian corporation with its principal place of business located at 100 Adelaide Street West, Suite 300, Toronto, Ontario M5H 1S3, Canada.

## JURISDICTION AND VENUE

5.    This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (action arising under an Act of Congress relating to patents).

6.    This Court has personal jurisdiction over TMX. TMX conducts business and has committed, contributed to, and/or has induced acts of patent infringement by others in this District, and elsewhere in the United States.

7.    TMX offers to sell and/or sells the infringing Accused Instrumentalities (as defined below) throughout the United States to customers based in the United States, including in the Eastern District of Pennsylvania. TMX advertises and has advertised some of its customers on its website and in promotional materials. *See, e.g.,* https://web.archive.org/web/20250205044240/https://www.tmx.com/en/analytics; https://www.tmx.com/en/resource/712. Several of TMX's customers, including for example Alithya, have offices in this District.

8.    TMX offers to sell and/or sells the Accused Instrumentalities throughout the United States, by making the Accused Instrumentalities available through various subscription-based platforms accessible to customers throughout the United States and to its own employees for their use in the United States.

9.    This Court has specific jurisdiction over TMX because (i) TMX offers to sell and/or sells the infringing Accused Instrumentalities in Pennsylvania, including to customers (such as Alithya), which have offices throughout this District, including in Bala Cynwyd, Philadelphia,

Radnor, and Warrington; and (ii) TMX directs the infringing Accused Instrumentalities to both U.S.-based customers and, more specifically, customers in Pennsylvania and this District.

10. The exercise of personal jurisdiction by this Court over TMX is also appropriate because the dispute arises out of and has a substantial connection with TMX's contacts with this State and its infringement in this State. Upon information and belief, TMX sells the Accused Instrumentalities directly to Pennsylvania customers, including to customers in the Eastern District of Pennsylvania.

11. Upon information and belief, TMX intentionally targets Pennsylvania in its efforts to sell the Accused Instrumentalities and is aware that its Accused Instrumentalities reach Pennsylvania. As a result, Pennsylvania-based consumers continue to purchase subscriptions to and to use the Accused Instrumentalities. TMX's affirmative acts such as providing all customers, including its customers in Pennsylvania, with documentation and support for the Accused Instrumentalities have induced, continue to induce, and contribute to the infringement of the Asserted Patents by TMX's partners, clients, customers, subscribers, and/or end users in Pennsylvania. The Court's exercise of jurisdiction over TMX would therefore be fair and reasonable.

12. Venue is proper in this District because TMX is a foreign corporation and venue is proper as to a foreign defendant in any district, 28 U.S.C. § 1391(c)(3).

## PLAINTIFFS' LEADING TECHNOLOGY

13. SAP, including its affiliates such as Business Objects, is a global leader in enterprise applications and business Artificial Intelligence. For over fifty years, Plaintiffs have been serving their customers by uniting business critical operations spanning finance, procurement, human resources, supply chain, and customer experience. Plaintiffs have obtained numerous patents for their innovations from the United States Patent and Trademark Office.

14. Plaintiffs serve a pivotal role in driving the evolution of the global business landscape by exploring and scaling emerging technologies in the business context, building upon the latest app developments, and enabling modern, cloud-native, more-compliant and more-secure software development practices, and providing a human-centric user experience across all devices.

15. Plaintiffs' product and service innovations span a large variety of products and services, including those related to human capital management, extended planning and analysis, customer experience, and spend management for businesses.

## THE ASSERTED PATENTS

16. The '059 Patent, titled "Systems and methods for selecting and importing objects," was duly issued on July 15, 2014. SAP SE is the owner of all right, title, and interest in the '059 Patent, including the right to sue for past infringement. The '059 Patent is valid and enforceable. A true and correct copy of the '059 Patent is attached as Exhibit 1. The '059 Patent is directed to a non-conventional technical solution to a technical problem, e.g., providing "a multi-step importation process that … allow[s] a user to import only the data that is needed in order to conserve system resources" and "more accurately select the data for importation." Ex. 1 at 2:10-19.

17. The '927 Patent, titled "Producing a virtual database from data sources exhibiting heterogeneous schemas," was duly issued on November 5, 2013. Business Objects is the owner of all right, title, and interest in the '927 Patent, including the right to sue for past infringement. The '927 Patent is valid and enforceable. A true and correct copy of the '927 Patent is attached as Exhibit 2. The '927 Patent is directed to a non-conventional technical solution to a technical problem, e.g., "the construction of virtual relational databases from heterogeneous sources" that "accommodates inconsistencies and contradictions within the heterogeneous sources … while providing enhanced flexibility and simplicity in the production of the virtual database." Ex. 2 at 3:27-32.

18. The '354 Patent, titled "Services and management layer for diverse data connections," was duly issued on April 14, 2015. SAP SE is the owner of all right, title, and interest in the '354 Patent, including the right to sue for past infringement. The '354 Patent is valid and enforceable. A true and correct copy of the '354 Patent is attached as Exhibit 3. The '354 Patent is directed to a non-conventional technical solution to a technical problem, e.g., providing a "common management layer … to provide one or more common services (e.g., error handling, monitoring, asynchronous handling, addressing, etc.) to data connections of diverse connectivity types that may be used or required by applications hosted on the computing platform." Ex. 3 at 4:15-20.

## TMX'S ACCUSED INSTRUMENTALITIES

19. Defendant TMX provides a variety of data platforms and related services to "operate[] global markets, and build[] digital communities and analytic solutions that facilitate the funding, growth and success of businesses, traders and investors." https://investors.tmx.com/English/home/default.aspx.

20. Defendant TMX uses, offers to sell and/or sells TMX Datalinx, TMX Analytics, TMX Grapevine, and TMX ESG Data Hub (the "Accused Instrumentalities") in the United States.

21. TMX Datalinx is an online service that provides "a broad range of real-time, historical, and other data products and services to customers across North America and around the globe." https://www.tmxinfoservices.com/. TMX Datalinx products include "real-time" and "historical" data for publicly traded equities markets, data related to market indices, and data related to corporate activities and environmental, social and governance (ESG) practices. https://www.tmxinfoservices.com/market-data/market-data-overview. For example, access to "real time" data can be provided to TMX customers in the form of a "[s]ubscription (via a terminal)" or as a high quality "feed." https://www.tmxinfoservices.com/market-data/real-time-

data. With respect to historical data sets and other TMX Datalinx products, the information can be provided to customers via "online pickup, email delivery, or SFTP download." https://www.tmxinfoservices.com/resource/en/91.

22. TMX Analytics "is a cloud-based ecosystem of financial data, machine learning libraries, statistical modules and big data tools to help clients aggregate data, build trading algorithms and develop and backtest strategies." https://www.tmxinfoservices.com/corporate-reference-data/analytics. TMX Analytics can be used in conjunction with TMX Datalinx, which provides access to "high-resolution analytics-ready datasets from multiple sources, including TMX proprietary data and key North American markets" or "custom solutions" depending on what the data is being used for, such as "quant research, compliance, trading risk management or ETF issuer" purposes. https://www.tmxinfoservices.com/corporate-reference-data/analytics. For example, using a cloud platform or the TMX Analytics API, subscribers can access different types of "trades, quotes, order book and FX datasets" using one of multiple computer programming languages, which in turn may be used by TMX's customers to conduct market research, perform backtesting, or do trading risk management. https://docs.tmxanalytics.com/.

23. TMX Grapevine is a "cloud-native analytics-as-a-service platform" that provides access to a "pre-build environment with advanced trading-related analytics," where "[u]sers can access a variety of graphical analytics and explore trends over time or drill into specific securities." https://www.tmx.com/en/analytics/products#grapevine/. For example, TMX Grapevine is described by TMX as a "core product of TMX Global Analytics that provides programmatic access to our underlying Global Data Lake." https://docs.tmxanalytics.com/#tmx-grapevine-intro. Grapevine provides access to "high resolution analytics-ready data sets"—including datasets related to U.S. and Canadian equities markets, foreign exchange markets, and corporate actions—

as well as an "out-of-the-box managed computing environment that enables advanced analytics capabilities." https://docs.tmxanalytics.com/#tmx-grapevine-intro. In addition to being an interface to perform and view "graphical analytics" (https://www.tmx.com/en/analytics/products#grapevine/), TMX states that Grapevine subscribers are able to perform tasks such as "aggregating data, building trading algorithms, backtesting a strategy, applying machine learning models against [TMX] data, or building custom reporting and looking to integrate those analytics back into [customer] systems" (https://docs.tmxanalytics.com/#tmx-grapevine-intro).

24. TMX ESG Data Hub provides access to "specialty data from our carefully curated portfolio of domain expert companies" that "can be delivered through SFTP or API leveraging TMX Datalinx existing data delivery platforms which are used by investors globally." https://www.tmxinfoservices.com/corporate-reference-data/esg-data. For example, through TMX ESG Data Hub, subscribers are able to access data sets for "climate risk models," company metrics related to "environmental, social, and governance categories," "[d]iversity, [e]quity, and [i]nclusion (DEI)," and regulatory risk factor, as well as a variety of ESG related financial news feeds. https://www.tmxinfoservices.com/corporate-reference-data/esg-data.

25. TMX offers to sell and/or sells the Accused Instrumentalities, including TMX Datalinx, TMX Analytics, TMX Grapevine, and TMX ESG Data Hub to U.S. customers, including those in the Eastern District of Pennsylvania. Upon information and belief, TMX and its employees and affiliates, also use the Accused Instrumentalities in the United States.

**COUNT I**
(Direct Infringement of the '059 Patent)

26. Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-25 of this Complaint.

27. Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '059 Patent, including at least claim 1 of the '059 Patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, and/or selling in the United States, including in the Eastern District of Pennsylvania, without authorization, the Accused Instrumentalities.

28. For example, claim 1 of the '059 Patent recites "[a] computer-implemented method for selecting objects for importation, each object including data and related processes, the method comprising: receiving a search query including an object type, the object type identifying two or more key fields that uniquely identify the object type specified in the search query; receiving a filter selection, including receiving a selection of one or more filtering parameters of the specified object type and receiving values of the selected filtering parameters; searching a database and identifying objects that have the identified two or more key fields and meet the filter selection, wherein the identified objects comprise data and at least one related process; and returning a result to a user indicating the identified objects."

29. Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 1 of the '059 Patent, including as outlined in Appendix A attached for TMX Grapevine and TMX ESG Data Hub.

30. As a result of Defendant's infringement of the '059 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

31. Defendant was made aware of the '059 Patent at least as early as the filing of this Complaint.

32. Since at least the filing of this Complaint, when it was made aware of the '059 Patent, Defendant's infringement has been, and continues to be, willful.

## COUNT II
(Indirect Infringement of the '059 Patent)

33. Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-32 of this Complaint.

34. Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

35. Upon information and belief, Defendant has induced and continues to induce others to infringe the '059 Patent, including at least claim 1 of the '059 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 1 of the '059 Patent. For example, Defendant advertises and has advertised the use of the Accused Instrumentalities across various industries. *See, e.g.,* https://www.tmx.com/en/resource/712; https://www.tmxinfoservices.com/corporate-reference-data/esg-data.

36. In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities in an infringing manner. For example, TMX produced detailed APIs explaining how to use the accused TMX Grapevine product. *See* https://docs.tmxanalytics.com/#tmx-grapevine-intro.

37. After Defendant received actual notice of the '059 Patent at least as early as the filing of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '059 Patent.

38. Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '059 Patent, including at least claim 1 of the '059 Patent, under 35 U.S.C. § 271(c) by offering to sell and/or selling in the United States the infringing functionality of the Accused Instrumentalities, which are especially made or adapted for use in an infringement of the '059 Patent, and which are not staple articles or commodities of commerce suitable for noninfringing use.

39. As a result of Defendant's indirect infringement of the '059 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

**COUNT III**
(Direct Infringement of the '927 Patent)

40. Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-39 of this Complaint.

41. Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '927 Patent, including at least claim 19 of the '927 Patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, and/or selling in the United States, including in Eastern District of Pennsylvania, without authorization, the Accused Instrumentalities.

42. For example, claim 19 of the '927 Patent recites "[a] method for implementation by one or more data processors comprising: defining, by at least one data processor, an individual publication schema for each heterogeneous source of a plurality of heterogeneous sources, wherein

each individual publication schema specifies mapping rules between data from a heterogeneous source and a non-permanent structured instance of data; generating, by at least one data processor, a non-permanent structured instance of data as defined by an individual publication schema; establishing, by at least one data processor, an integration schema defining a set of integration rules for combining data from each non-permanent structured instance of data as defined by individual publication schemas, the integration schema being used to analyze conflicts and further defining a source view based on a target schema that includes hidden attributes not used in a target schema; and forming, by at least one data processor, a target non-permanent structured instance of data to include data from the plurality of heterogeneous sources based on at least one integration schema."

43. Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 19 of the '927 Patent, including as outlined in Appendix B attached for TMX Grapevine and TMX ESG Data Hub.

44. As a result of Defendant's infringement of the '927 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

45. Defendant was made aware of the '927 Patent at least as early as the filing of this Complaint.

46. Since at least the filing of this Complaint, when it was made aware of the '927 Patent, Defendant's infringement has been, and continues to be, willful.

## COUNT IV
(Indirect Infringement of the '927 Patent)

47. Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-46 of this Complaint.

48. Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

49. Upon information and belief, Defendant has induced and continues to induce others to infringe the '927 Patent, including at least claim 19 of the '927 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 19 of the '927 Patent. For example, Defendant advertises and has advertised the use of the Accused Instrumentalities across various industries. *See, e.g.*, https://www.tmx.com/en/resource/712; https://www.tmxinfoservices.com/corporate-reference-data/esg-data.

50. In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities in an infringing manner. For example, TMX produced detailed APIs explaining how to use the accused TMX Grapevine product. *See* https://docs.tmxanalytics.com/#tmx-grapevine-intro.

51. After Defendant received actual notice of the '927 Patent at least as early as the filing of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '927 Patent.

52. Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '927 Patent, including at least claim 19 of the '927 Patent, under 35 U.S.C. § 271(c) by offering to sell and/or selling in the United States the infringing functionality of the Accused Instrumentalities, which are especially made or adapted for use in an infringement of the '927 Patent, and which are not staple articles or commodities of commerce suitable for noninfringing use.

53. As a result of Defendant's indirect infringement of the '927 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

## COUNT V
(Direct Infringement of the '354 Patent)

54. Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-53 of this Complaint.

55. Upon information and belief, Defendant infringes under 35 U.S.C. § 271(a) the '354 Patent, including at least claim 11 of the '354 Patent, literally and/or under the doctrine of equivalents, by making, using, offering to sell, and/or selling in the United States, including in Eastern District of Pennsylvania, without authorization, the Accused Instrumentalities.

56. For example, claim 11 of the '354 Patent recites "[a] method, comprising: providing, in a computing platform, a layer for management of diverse types of data connections for use by a software application launched on the computing platform, the data connections being independent of software application logic or coding; and providing a common entry point in the computing platform to receive data destined for external data receivers over the diverse types of data connections from the software application on the computing platform."

57. Upon information and belief, the Accused Instrumentalities meet each and every limitation of at least claim 11 of the '354 Patent including as outlined in Appendix C attached for TMX Grapevine and TMX ESG Data Hub.

58. As a result of Defendant's infringement of the '354 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

59. Defendant was made aware of the '354 Patent at least as early as the filing of this Complaint.

60. Since at least the filing of this Complaint, when it was made aware of the '354 Patent, Defendant's infringement has been, and continues to be, willful.

## COUNT VI
(Indirect Infringement of the '354 Patent)

61. Plaintiffs incorporate by reference and re-allege each of the allegations in Paragraphs 1-60 of this Complaint.

62. Upon information and belief, the Accused Instrumentalities are marketed to, provided to, and/or used by or for Defendant's partners, clients, customers, subscribers, and/or end users across the country and in this District.

63. Upon information and belief, Defendant has induced and continues to induce others to infringe the '354 Patent, including at least claim 11 of the '354 Patent, under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Defendant's partners, clients, customers, subscribers, and/or end users, whose use of the Accused Instrumentalities constitutes direct infringement of at least claim 11 of the '354 Patent. For example, Defendant advertises and has

advertised the use of the Accused Instrumentalities across various industries. *See, e.g.*, https://www.tmx.com/en/resource/712; https://www.tmxinfoservices.com/corporate-reference-data/esg-data.

64. In particular, Defendant's actions that aid and abet others such as its partners, clients, customers, subscribers, and/or end users to infringe include providing instruction materials, demonstrations, and training services showing customers how to use the Accused Instrumentalities in an infringing manner. For example, TMX produced detailed APIs explaining how to use the accused TMX Grapevine product. *See* https://docs.tmxanalytics.com/#tmx-grapevine-intro.

65. After Defendant received actual notice of the '354 Patent at least as early as the filing of this Complaint, Defendant continued, with specific intent or willful blindness, to induce Defendant's partners, clients, customers, subscribers, and/or end users to infringe the '354 Patent.

66. Upon information and belief, Defendant has contributorily infringed and continues to contributorily infringe the '354 Patent, including at least claim 11 of the '354 Patent, under 35 U.S.C. § 271(c) by offering to sell and/or selling in the United States the infringing functionality of the Accused Instrumentalities, which are especially made or adapted for use in an infringement of the '354 Patent, and which are not staple articles or commodities of commerce suitable for noninfringing use.

67. As a result of Defendant's indirect infringement of the '354 Patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs fixed by the Court.

**DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgement in their favor and against Defendant, and respectfully request the following relief:

A. A judgment in favor of Plaintiffs that Defendant has directly and/or indirectly infringed and is infringing, either literally and/or under the doctrine of equivalents, one or more claims of the Asserted Patents;

B. A judgment in favor of Plaintiffs that Defendant's infringement of the Asserted Patents has been willful, and that the Defendant's continued infringement of the Asserted Patents is willful;

C. A judicial determination of the conditions for Defendant's future infringement, such as an ongoing royalty;

D. A judgment and order requiring Defendant to pay Plaintiffs damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement;

E. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees against Defendant; and

F. All other relief that the Court deems just and proper.

Dated: February 27, 2025

By: */s/ Aleksander J. Goranin*
Aleksander J. Goranin (PA 92452)
Tyler Marandola (PA 313585)
Brianna Vinci (PA 325866)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
agoranin@duanemorris.com

James R. Batchelder (*pro hac vice* to be filed)
James L. Davis, Jr. (*pro hac vice* to be filed)
**ROPES & GRAY LLP**

525 University Avenue, 8th Floor
East Palo Alto, CA 94301
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
james.l.davis@ropesgray.com

Kathryn C. Thornton (*pro hac vice* to be filed)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue,
N.W. Washington, D.C. 20006
Telephone: (202) 508-4600
kathryn.thornton@ropesgray.com

Abed Balbaky (*pro hac vice* to be filed)
Meredith Cox (*pro hac vice* to be filed)
**ROPES & GRAY LLP**
1211 Avenue of the America
New York, NY 10036
Telephone: (212) 596-9062
abed.balbaky@ropesgray.com
meredith.cox@ropesgray.com

*Attorneys for Plaintiffs*